[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10020
Non-Argument Calendar

_____

D. C. Docket No. 06-80371-CV-WJZ

RALPH BRILLINGER,

Plaintiff-Appellant,

versus

CITY OF LAKE WORTH,
WILLIAM SMITH,
PATRICK HAMPSHIRE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 21, 2008)

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Ralph Brillinger, proceeding pro se, appeals the district court's grant of summary judgment in favor of the City of Lake Worth in his employment discrimination and civil rights actions. Brillinger had alleged that the City (1) fired him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA"); (2) retaliated against him because of his complaints of discrimination, in violation of the ADEA and the FCRA; (3) irrationally treated him differently than other employees, in violation of the Equal Protection Clause; and (4) violated his free speech rights by firing him in retaliation for filing a lawsuit against the city, in violation of § 1983 and the FCRA.

## I. Background

Brillinger was an eighteen-year veteran of the City's police department. By April 2004, he had attained the rank of sergeant. During the relevant time period, the City had two ways to compensate officers who worked beyond their normal hours. Call-out pay was due when an officer was called to return to duty during his off hours. An officer awarded call-out pay was compensated time-and-a-half for a minimum of three hours. Overtime, on the other hand, was also calculated using time-and-a-half but there was no three-hour minimum. The three-hour

2

minimum was an attempt to compensate officers for the extra trouble of returning to work. The parties do not dispute that call-out pay did not apply to an officer who arrived at the station shortly before his shift, but began his duties before his shift actually began. In such a case, the officer might be entitled to overtime pay, but not call-out pay.

In April 2004, Brillinger was assigned to the morning shift, which began at 7:30 am. His usual routine was to arrive around 7 am, check email, and prepare for the morning briefing. (It is undisputed that a police officer following this routine would not ordinarily be compensated for this.) On April 4, Brillinger arrived as usual and heard Sergeant Odum on the phone with dispatch concerning a situation with a gunman who had barricaded himself in a house and had hostages. The tactical patrol force (SWAT team) and containment teams had been called to the scene. Brillinger was not a member of either team. Dispatch informed Odum that another person was needed at the scene, but according to the records, Odum did not send anyone from the station to assist, and Brillinger did not report to the scene.

Officer Meloy was a member of the containment team. Earlier that morning—prior to his shift—he was paged at home. Although he did not immediately receive the page because he had misplaced his pager, he learned of

3

the incident over his radio. After realizing there was an incident, he quickly gathered his weapon and reported to the station. After arriving at the station, he was summoned to the scene, where he remained for several hours.

Officer Meloy requested call-out pay and was awarded it. Brillinger, Odum, and Officer Conforti—who also was at the station early that morning—also submitted payroll slips for call-out pay, although none of them were called to the scene or reported to the scene.

The supervisor, upon learning that Brillinger, Odum, and Conforti were neither at the scene nor were called back to work while off duty, denied overtime and launched an investigation into the request. Internal Affairs determined that Brillinger, Odum, and Conforti had been at the station preparing for their shift and thus had not been entitled to call-out pay.

Following the investigation of Brillinger, Odum, and Conforti, Deputy Chief Hampshire recommended that Brillinger be demoted because Brillinger's conduct was a dereliction of duty, there was no evidence that he had been called out, and it was not reasonable for Brillinger to have honestly interpreted the call-out policy in a manner that would entitle him to call-out pay. Hampshire indicated that he was suspicious of the behavior because Brillinger had many years on the force, had put in for overtime while the supervisor was out of town, and did not

4

tell the other officers at the station to put in for call-out pay. Hampshire considered the request for call-out pay a false report. Chief Smith considered the recommendation, held a pre-determination hearing, and ultimately terminated Brillinger, Odum, and Conforti for violations of the department's policies on truthfulness, false documents, and unsatisfactory performance of duties. In reaching this conclusion, Smith considered Brillinger's years of service and that there was no reasonable basis for Brillinger to believe he had been called out. Smith also considered the numerous instances of prior disciplinary actions, which included written reprimands and suspensions for, among other violations, at least one instance of payroll issues and overtime requests.[1] Smith testified that he believed Brillinger intentionally put in for overtime to which he was not entitled, and this impacted his ability to do his job. Smith stated Brillinger could not "be trusted to handle basic supervisory responsibilities or responsibilities for any employee to account for their time and to do so accurately." Smith explained that, because this was not the first instance of such a violation, Brillinger had no credibility with him. Brillinger was terminated on November 30, 2004.

Brillinger appealed the termination pursuant to the City's Collective Bargaining Agreement ("CBA") and the matter was sent to arbitration. Following

---

[1] Among these numerous disciplinary actions, Brillinger was reprimanded for submitting overtime slips for two missed lunches when he was not entitled to overtime pay.

the arbitration hearing, the arbitrator disagreed with the termination decision and ordered Brillinger reinstated with a demotion. The City complied and reinstated Brillinger in 2005 with a demotion from sergeant to patrolman, with a corresponding salary reduction of about 18%. The CBA states that when an officer is demoted, his salary is to be decreased by a *minimum* of 5%.

Brillinger filed suit. Brillinger alleged his termination was the result of age discrimination. Specifically, he claimed that other similarly situated younger officers were not disciplined for the same conduct. Brillinger identified the following officers who were treated more favorably: Officers Meloy, McCarthy, Boliver, Vieira, and Pilalis. Brillinger claimed that the City retaliated against him by denying equal pay and retirement benefits because of his testimony in a co-worker's arbitration which spanned from 1999-2003, his participation in a co-worker's EEOC complaint in 2001, and his own EEOC complaint. Brillinger also asserted a "class of one" Equal Protection claim, stating that the City irrationally treated him differently than other employees. Finally, Brillinger further alleged that the City violated his First Amendment right to free speech by terminating him after he filed a lawsuit against the City in 2002 for invasion of privacy in

connection with the City's decision to record calls made on the non-emergency police lines.[2]

The City moved for summary judgment which the court granted. This is the appeal from that decision.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

---

[2] In 2002, Brillinger and others filed a class action lawsuit against the City after they discovered that the City had been recording calls made to/from the non-emergency lines. In particular, while off-duty, Brillinger spoke to his now-wife Lori, who was a dispatcher. The calls, made to/from the non-emergency lines were recorded and used in disciplinary proceedings against Lori. Brillinger and Lori would frequently call each other on these lines and talk about "casual things" such as the Jerry Springer Show. Brillinger complained of the recordings and filed suit. After grieving the discipline, Lori was reinstated. The City eventually won that case on summary judgment.

## III. Discussion

*A. Age Discrimination under both the ADEA and the FCRA*[3]

Brillinger argues that he was terminated because of his age. He states that other employees who also undeservingly requested call-out pay were treated differently. He further contends that younger officers were paid more and that his salary reduction following his demotion is evidence of discrimination due to age.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In analyzing a claim under the ADEA, this court applies the "the burden-shifting framework established" by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 n.6 (11th Cir. 2001) (noting that "[a]though the McDonnell Douglas framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well."). Under the McDonnell Douglas framework, the plaintiff must first establish a

---

[3] The legal analysis under the ADEA and the FCRA is the same. Zaben v. Air Prods. & Chems. Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997).

8

*prima facie* case of discrimination. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

To establish a *prima facie* case of age discrimination, the plaintiff should show that: (1) he was a member of the protected group of persons between the ages of 40 and 70; (2) he was subject to adverse employment action; (3) a younger person filled the position from which he was discharged; and (4) he was qualified to do the job. Id. A *prima facie* case of discriminatory discharge based on age may also be established if the plaintiff shows that "the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984).

If the plaintiff establishes a *prima facie* case, the employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut a presumption of discrimination. Chapman, 229 F.3d at 1024. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Id. at 1024-25. A plaintiff then may overcome the employer's asserted legitimate reasons and avoid summary judgment "either directly by persuading the court that

9

a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999) (emphasis and quotations omitted). Still, the plaintiff "must meet [the proffered legitimate] reason head on and rebut it, and the employee cannot succeed simply by quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030.

Here, Brillinger failed to establish a *prima facie* case because he cannot show that a similarly situated employee was treated differently. First, the City terminated Odum and Conforti for the same violations. Also, the officers Brillinger identified as comparators were not identical to Brillinger and thus do not constitute appropriate comparators. Meloy was not the same rank, was a member of the containment team, and actually responded to the call-out. Officers McCarthy, Pilalis, Boliver, and Vieira had fewer years on the force, fewer instances of prior discipline, and lesser rank.[4] Thus, none of these individuals were appropriate comparators. Finally, there is no evidence that any sergeant

---

[4] Officer McCarthy had been with the police for only a few years and had submitted an overtime slip for a missed lunch. Officer Pilalis submitted an overtime slip for a half-hour because he missed lunch during a jury trial; his sergeant noted that the trial had in fact taken a lunch break and denied the request. Officer Bolivar submitted inaccurate time slips and was given a written reprimand. At the time, he had three years with the police department. Finally, Officer Vieira worked through lunch and submitted a request for overtime. He received a written reprimand because he did not receive prior authorization to miss the meal nor did he attempt to reschedule his lunch. He was warned that he would be subject to more severe discipline if other discrepancies occurred.

10

under the age of 40 with a lengthy disciplinary record falsified payroll slips—after already being warned about such behavior—and was retained.

With respect to the pay issue, under the terms of the City's policies, an officer subject to demotion faces a *minimum* of a 5% salary reduction. Nothing in the policy dictates the maximum decrease. Brillinger has failed to offer anything to show the decrease was motivated by age discrimination.

Moreover, even if we were to conclude that Brillinger established a *prima facie* case, summary judgment was proper because Brillinger failed to show that the City's proffered reasons for termination were a pretext for discrimination. The City's proffered reasons were that it believed that Brillinger knowingly and wrongfully violated the City's policies by falsifying documents in order to be paid for overtime that he did not work and that he had been derelict in his duties. Because Brillinger had a lengthy disciplinary record, his superiors found him to lack credibility and did not feel him trustworthy. Both Smith and Hampshire testified that they had lost faith in Brillinger's ability to do his job and supervise other employees as a result of his repeated violations and disciplinary actions. Numerous other officers testified that Brillinger could not have reasonably believed that his actions qualified for call-out pay and Brillinger admitted in his deposition that he was not entitled to call-out pay.

11

In response to the City's proffered reason for termination, Brillinger can point us to no evidence showing pretext and that the true reason for his termination was his age. He fails to meet his burden and, therefore, we affirm summary judgment on these claims.

*B. Retaliation Claims under the ADEA and the FCRA*[5]

Brillinger next contends that summary judgment was improper on his retaliation claims. Retaliation claims are governed by the same burden-shifting framework described above. See Chapman, 229 F.3d at 1024. To establish a *prima facie* case of retaliation, Brillinger must show that (1) he engaged in ADEA protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1117 (11th Cir. 2001).

Brillinger claims that his complaining of discrimination is the protected activity.[6] He states that as a result of these complaints, he was terminated and,

---

[5] The elements of retaliation under the FCRA and the ADEA are the same. See Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006).

[6] Brillinger actually contends that his retaliation claims are based upon two different protected activities: filing a lawsuit and complaining of discrimination. Filing a lawsuit alleging an invasion of privacy is not protected under the retaliation statute because it is not opposition to discrimination based on age. See 29 U.S.C. § 623(d). Thus, Brillinger's only alleged protected activity is his complaints of discrimination.

12

when he was reinstated, he suffered a substantial decrease in pay.[7]  Again, though,

even assuming that Brillinger has established a *prima facie* case, he has failed to

show pretext.

The City put forth proffered reasons for the termination and decrease in

pay—that Brillinger falsified documents in order to receive pay for work he did

not do, was derelict in his duties, and was untrustworthy, and the City's policy for

demoting police officers requires a minimum of a 5% pay decrease.  Brillinger has

failed to meet his burden to show that the proffered reasons are pretext and that the

true reason for the termination and decrease in pay is because Brillinger

complained of discrimination.  We, therefore, affirm the district court's entry of

summary judgment on the retaliation claims.

*C. Equal Protection*

Brillinger argues that summary judgment was also improper on his "class of

one" Equal Protection claim.  We are bound by the recent Supreme Court ruling in

which the Court concluded that "class of one" Equal Protection claims brought by

public employees are not cognizable.  Engquist v. Oregon Dep't of Agric., ---

---

[7] Brillinger also alleges that he was denied pension benefits but he (1) is unable to show that he exhausted his administrative remedies on this matter by including this in his EEOC claim and (2) fails to provide any evidence of the denial of pension benefits.  Therefore, this argument is not properly before this court.  See 29 U.S.C. § 626(d) (plaintiff must exhaust administrative remedies by filing his claim with the EEOC).

S.Ct. ----, 2008 WL 2329768 (No. 07-474) (Jun. 9, 2008).  Accordingly, we affirm

summary judgment on this claim.

*D. First Amendment*

Brillinger further contends that the district court erred in granting summary

judgment on his First Amendment claim under § 1983 and the FCRA.  Brillinger

alleged that he was treated adversely because of his invasion-of-privacy lawsuit

against the City.  Specifically, he asserted that, after he complained, he was

terminated because the City wanted to chill his speech and retaliate against him.

To succeed on a First Amendment retaliation claim, the plaintiff must

show that the adverse employment action was causally related to the protected

speech.  See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  Assuming without

deciding that Brillinger's lawsuit was protected speech, he has failed to show

any evidence that his termination was causally related to the lawsuit.  Indeed,

the lawsuit was filed in 2002 and Brillinger was not terminated until 2005.  We,

therefore, affirm summary judgment as to the First Amendment claims.

Accordingly, we AFFIRM.[8]

---

[8] Brillinger also filed a Motion for Leave to File Record Excerpts to Appellant's Reply Brief. We have reviewed the record and we deny that motion.